IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WILMA KPOHANU,** | **CASE NO. 2:11-cv-903** |
| | **CRIM. NO. 2:05-cr-250** |
| Petitioner, | **JUDGE FROST** |
| | **MAGISTRATE JUDGE KEMP** |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

### REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, has filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion, respondent's response, petitioner's traverse, and the record in the underlying criminal case.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED .**

### I.

The United States Court of Appeals for the Sixth Circuit summarized the facts of this case as follows:

> Wilma Kpohanu, a native Liberian, started a home health care business, Angel Health Care, Inc. (AHC), to serve the West African community in and around Columbus, Ohio. She sought and obtained an Ohio Medicare/Medicaid provider certification, through which the Ohio Department of Health reimburses authorized home visits in the amounts of $55 for skilled ("nursing") and $24 for unskilled ("home health aide") visits. This is an automatic reimbursement system, policed only by separate audits.
>
> From October 2001 until May 2002, AHC submitted over 50,000 claims for

skilled nursing visits, resulting in reimbursements in the amount of $2,920,775. But AHC had doctors' orders (Form 485) for only $208,627 worth of visits, which means that AHC obtained $2,712,148 in unsupported reimbursements. AHC had been claiming 400 visits per day (two visits per day for each of its 200 patients), seven days per week, despite having only 10 nurses on staff, some of whom never left the office. And AHC had been submitting claims on behalf of other (uncertified) providers, and keeping 10% of the reimbursement for itself.

In early 2002 a concerned AHC employee sent an anonymous email to the Ohio Attorney General's Medicaid Fraud Control Unit. The Attorney General ("AG") opened an investigation and began to interview potential witnesses, whereupon the number of claims submitted by AHC plummeted. When the Ohio Department of Health requested patient records for a review in late 2002, Kpohanu provided boxes of records that were later determined to be falsified (photo copies of nursing notes with forged signatures, photocopies of doctors' signatures cut-and-pasted onto fabricated orders, etc.)

In January 2003, the Ohio Department of Job & Family Services (DJFS) Surveillance and Utilization Review Section commenced a "full scope" audit and, noticing that all of the patients' photocopied handwritten records were identical but for the names and dates, referred the case to the AG. By August 2004, the AG and the U.S. Department of Health & Human Services were convinced of the illegality of AHC's activities, and arrived at AHC with subpoenas. As agents were collecting and reviewing medical records in one room, AHC employees were shredding records in another room. An employee reported this to the agents, who returned the next day and recovered numerous records (shredded and unshredded) from the dumpster outside the AHC offices.

A federal grand jury issued an indictment in December 2005 and a superceding indictment in June 2006, charging Kpohanu and AHC with one count of health-care fraud in violation of 18 U.S.C. § 1347, and two counts of making false health-care statements in violation of 18 U.S.C. § 1035.FN1 The government prosecuted Kpohanu and AHC as co-defendants but, in reality, Kpohanu directed all of the operations of AHC and was therefore responsible for the representations and misrepresentations of AHC with regard to benefits provided and billing.

    FN1. A co-defendant, Manjula Sankarappa, entered a guilty plea to obstructing justice (for shredding the documents).

2

>The case proceeded to jury trial, where the prosecution argued that Kpohanu had directed a scheme to defraud Ohio Medicaid by (1) billing claims for fictitious nursing services,FN2 (2) billing Medicaid for services actually rendered by other (uncertified) home-health-care agencies, and (3) ordering her employees to cover up the scheme by backfilling patient charts with fraudulent nursing notes and doctors' orders. Ten former AHC employees testified for the government, and on cross-examination Kpohanu's attorney attempted to portray each of them as not credible. Kpohanu testified that the government's witnesses had all lied.
>
>   FN2. Throughout her brief to this court, Kponahu argues from the premise that this is a case about "up-coding"-charging for a higher code or level of care (skilled nursing) than was actually provided (unskilled care). The government, however, emphasizes that this is not about up-coding, but rather about defendants' billing for services never rendered.
>
>Trial began on December 4, 2006, and lasted four days. Kpohanu and AHC moved for acquittal at the close of the government's case and again at the close of trial. The court denied the motion both times. The jury convicted Kpohanu and AHC on all three counts. The court ordered a PSR and had a sentencing hearing on April 18, 2007. The court calculated Kpohanu's sentencing range as 97 to 121 months in prison, considered the § 3553 factors, and imposed a sentence of 97 months, three years supervised release, and $2,712,148 in restitution. Kpohanu appealed, raising numerous issues for review. The court sentenced AHC to three years probation and $2,712,148 in restitution, and ordered it to "authorize an individual to complete unfinished corporation business while Wilma Kpohanu is incarcerated."

*United States v. Kpohanu*, 377 Fed. Appx. 519, 520-522, 2010 WL 1957498, *1-2 (6th Cir. May 17, 2010).

Petitioner filed a timely appeal, in which she asserted the following claims: (1) the trial court erred by refusing her motion for acquittal on the basis that the prosecution had produced insufficient evidence to support a conviction; (2) the trial court erred by allowing the government to proceed against her on a legally inadequate theory of a crime; (3) the

3

trial court committed several errors concerning witness testimony, attorney conduct, and jury instructions; (4) the trial court erred by imposing an unreasonable sentence; and (5) the trial court erred by imposing restitution in an improper amount. *See United States v. Kpohanu, supra.* Petitioner's fourth and fifth claims on appeal were not based on arguments that the jury should be the one to find the facts supporting the sentence and restitution pursuant to the Sixth Amendment; rather petitioner argued that the sentencing court abused its discretion based on the evidence before it. *Id.* On May 17, 2010, the United States Court of Appeals for the Sixth Circuit affirmed the conviction and sentence. *Id.*

On October 7, 2011, petitioner filed the instant *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. §2255. She asserts the following, recited here verbatim:[1]

> [Ground one:] Kpohanu was denied Effective Assistance of Counsel in violation of the Sixth Amendment of the Constitution due to the failure of counsel to invoke the current Supreme Court rulings regarding significant sentencing enhancements which were based on factors unproven through submission to the jury.
>
> Ground two: Kpohanu's Ninety-seven Month sentence is as a direct result of constitutional deprivations, cumulative deprivations, cumulative statutory errors, and misapplications of the Federal Sentencing Guidelines.
>
> ENHANCEMENTS 1 & 2: Kpohanu's guideline sentencing range was enhanced two (2) levels under 3B1.3 for Abuse of a Position of Trust and further enhanced (4) four points under 3B1.1(a) for Organizer. Existing case

---

[1]Grounds two through four are taken verbatim from the Motion (Doc. # 134); however, that document is missing "Page 5," wherein petitioner has presumably set forth ground one. Accordingly, ground one is taken verbatim from petitioner's accompanying memorandum of law (Doc. # 135 at 7).

law indicates this was an improper calculation assessed without submission to the jury to make its findings. Relevant case law requires that any factors utilized to enhance her sentence from the base offense level of 6 must be submitted to a jury or admitted to by her to sustain the nemancements [sic].

Counsel's performance was deficient in not invoking relevant case law regarding the court[']s extrajudicial conduct in finding for the enhancements without submission to the jury.

Ground three: The Movant was deprived of rights under the Sixth Amendment of the Constitution by the finding of loss for the purpose of enhancing the sentence past the base offense level instead of submitting it to the jury.

LOSS: Movant[']s base of[f]ense level was enhanced from the base offense level of 6 by the district court adopting the findings of the Probation Officers Report. The loss calculation enhanced eighteen (18) levels. The amount of loss the victim actually sustained caused by Kpohanu[']s] criminal actions, should have been submitted and found by the jury. To find otherwise is to engage in extrajudicial conduct. The court[']s finding of the loss calculation for the purpose of sentencing was contrary to established Case Law and Guideline Policy.

Ground four: Kpohanu is Entitled to Resentencing Without Application of Any Enhancement or Increase in the Base Offense Level Except as Was Determined Solely By the Jury Verdict.

The use of the federal sentencing guidelines to determine Kpohanu's sentence violated her rights under the Sixth and Fifth Amendments to the United States Constitution to have the government charge by indictment and prove beyond a reasonable doubt to a unanimous jury all factors used to determine her sentence. Kpohanu is entitled to resentencing without the application of the enhancements[.]

Case law held unconstitutional under the Sixth Amendment a Washington State statute that authorized the sentencing judge to impose a sentence above the "standard" range set forth in the statute punishing the offense if he found any of a list of aggravating factors that justified such a departure[.] The trial court imposed a sentence of 97 months. Absent the finding of enhancements by the jury 6 points, two for abuse of a position of trust and four for organizer, the guideline sentencing range would have been 24 in a Criminal

>History Category of I translates into a range of 51 to 63 months. Absent the calculation of loss which was not presented to the jury, a base offense level of 6, without the increased by 18 levels would have been 0 to 6 months. Far less than what the court imposed.

It is the position of the respondent that petitioner's claims are without merit.

## II.

Not every error which allegedly occurs during the course of a criminal trial and sentencing can be raised in a motion filed under 28 U.S.C. § 2255. A motion pursuant to § 2255 is not a substitute for an appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("we have long and consistently affirmed that a collateral challenge may not do service for an appeal"). Thus, if a claim has not been raised on appeal, it cannot simply be asserted in a § 2255 motion. Rather, in order for the claim properly to be brought in such a motion, it must either be the kind of claim which is not ordinarily based on the trial court record alone (such a claim of ineffective assistance of counsel, see *Massaro v. United States*, 538 U.S. 500 (2003)), or the petitioner must demonstrate both cause for having failed to raise it on direct appeal and prejudice from the failure to raise it there. *See United States v. Frady*, 456 U.S. at 167–68. As the Supreme Court held in *Bousley v. United States*, 523 U.S. 614, 622 (1998), if a claim "can be fully and completely addressed on direct review based on the record ... the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' ... or that he is 'actually innocent.' " (internal citations omitted).

Here, petitioner's first ground for vacating the sentence, which is a claim for

6

ineffective assistance of counsel, need not have been raised on appeal and accordingly has not been procedurally defaulted.  See *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").  Her second ground mentions counsel's performance and appears to be another claim for ineffective assistance of counsel and, therefore, not procedurally defaulted.  The last two grounds are not based on ineffective assistance of counsel and could have been but were not raised on direct appeal and, as a result, those claims were procedurally defaulted.  Other courts have held that claims relating to the proper application of *United States v. Booker* are procedurally defaulted if not raised on direct appeal.  *See, e.g., United States v. Munoz*, 2010 WL 3732173, *7 (N. D. Okla. September 20, 2010).  Petitioner has not asserted in her motion any reason why these claims were not raised on direct appeal, so she cannot satisfy the "cause" portion of the "cause" and "prejudice" test made applicable to § 2255 motions by *United States v. Frady*.  Further, she has not claimed that she is actually innocent of the charge for which she was convicted.  Under these circumstances, the third and fourth grounds for this motion are barred by the doctrine of procedural default.

### III.

Petitioner's claims in this Motion rest on an incomplete understanding of the Supreme Court's rulings relating to the Sixth Amendment's impact on the Federal Sentencing Guidelines.  Petitioner claims that her sentencing range was improperly

7

enhanced under the Sentencing Guidelines because the facts supporting those enhancements were not submitted to a jury or admitted by petitioner.  She further claims that her counsel was ineffective for failing to point out this alleged error.  In support of her argument, she points to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  Petitioner's argument fails because it ignores the Supreme Court's more recent decision in *United States v. Booker*, 543 U.S. 220 (2005), which was decided before the trial and sentencing in this case.

In *Apprendi*, the Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Four years later, the Court in *Blakely v. Washington* held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303. In that case, the Court held that the sentence at issue violated the Sixth Amendment right to a trial by jury because the trial court made a judicial determination of "deliberate cruelty," which increased the sentence by thirty-seven months above what would have been the maximum sentence permissible based on the facts admitted in the plea.  *Id.* at 298, 301-05.  The year after the *Blakely* decision, the Court decided *Booker* and held that because the federal Sentencing Guidelines as enacted were mandatory, the Sixth Amendment applied to the Guidelines.  *Booker*, 543 U.S. at 226.  However, the Court also held that it would thwart Congressional intent to require juries to find (or

8

defendants to admit) every fact necessary for a particular sentence under the Sentencing Guidelines and, accordingly, the Court invalidated the provisions of the Sentencing Reform Act of 1984 that made the Guidelines mandatory. *Id.* at 226, 245-49.  In light of *Booker*, the Court of Appeals has made it clear that "judicially found facts at sentencing do not violate *Booker* under an advisory Guidelines scheme." *U.S. v. Cheney*, 299 Fed. Appx. 479, 480-81, 2008 WL 4691798, *1 (6th Cir. 2008).  Accordingly, when "a district court understands that the Guidelines are only advisory, judicial fact-finding done by the preponderance of the evidence is permissible." *U.S. v. Sexton*, 512 F.3d 326, 330 (6th Cir. 2008).

  Where, as here, a defendant was "sentenced under an advisory Guidelines scheme, the maximum statutory penalty that the district court could impose was determined by the statute of conviction, rather than by a Guidelines range calculated using only jury findings." *U.S. v. Sexton*, 512 F.3d at 330; *see also U.S. v. Cheney*, 299 Fed. Appx. 479, 480-81, 2008 WL 4691798,*1-2 (6th Cir. 2008) (upholding the trial court's sentence which was based on that court's non-jury findings of a 400-700 kilogram drug quantity and defendant's leadership role, and holding that determinations under the advisory Guidelines need not be made by a jury or admitted by defendant as long as the sentence is below the maximum set forth in the statute of conviction).  Here the jury convicted petitioner of one count of health-care fraud in violation of 18 U.S.C. § 1347 and two counts of making false health-care statements in violation of 18 U.S.C. § 1035. Section 1347 provides that violators "shall be fined under this title or imprisoned not

9

more than 10 years, or both." Petitioner was sentenced to 97 months for the health-care fraud count pursuant to section 1347, which was below the ten-year (120 month) statutory maximum. Section 1035 provides that violators "shall be fined under this title or imprisoned not more than 5 years, or both." Petitioner was sentenced to the 60-month statutory maximum for each of the false health-care statement counts pursuant to section 1035, both of which were to be served concurrently with the health-care fraud sentence. Petitioner's motion does not contest her convictions but her sentences. Petitioner's sentence did not exceed the maximum penalty set forth in the statutes of conviction for any of the counts, and accordingly, her sentence was not imposed contrary to the Sixth Amendment right to a jury trial.

  Turning to petitioner's claims here, her first claim – that counsel was ineffective for failing to challenge the enhancements under the Guidelines as violating the Sixth Amendment – fails because following *Booker*, the Guidelines are now advisory and not subject to the Sixth Amendment requirements. Because there is no legal basis for such a challenge in this case, counsel did not err by failing to make one. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 687 (1984) (for counsel to be ineffective he or she must have made an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). Petitioner's second claim – that counsel erred by failing to challenge the court for improperly enhancing her sentence under the Guidelines by finding that she abused a position of trust and that she was an organizer – also fails for the same reasons. None of the enhancements under the Guidelines

raised the sentence above the maximum penalty set forth in the relevant statutes of conviction and, accordingly, the judge was permitted to find facts for purposes of considering the advisory ranges under the Guidelines.

Petitioner's procedurally-defaulted third claim (that the court improperly enhanced her sentence under the Guidelines by finding the amount of loss) and fourth claim (that all three of the enhancements that the court found applicable under the guidelines were improper because they were based on judicial factfinding) would fail on the merits for the same reason. While not specifically included in petitioner's statement of grounds in her motion, petitioner's memorandum of law includes a brief discussion of restitution within the discussion of the fourth issue. In particular, she argues that any fact that increases the amount of restitution must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt. This argument is also procedurally defaulted and, in addition, would fail on the merits. The Victim and Witness Protection Act, 18 U.S.C. § 3663-3664, which authorizes restitution orders, requires that the court order restitution "in the full amount of each victim's losses *as determined by the court* . . . ." 18 U.S.C. 3664(f)(1)(A) (emphasis added). Further, the *Apprendi - Booker* line of cases does not affect restitution orders because the restitution statutes do not specify a statutory maximum. *U.S. v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005). Accordingly, "[w]here, as here, a statute mandates that a judge exercise his or her discretion, *Booker* provides no impediments to a judicial determination of the necessary underlying facts." *Id.* at 462.

Lastly, respondent addressed an inherent argument that petitioner's sentence was unreasonable. Petitioner raised that argument in her direct appeal, and the Court of Appeals rejected that argument, upholding the district court's sentence. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *DuPont v. U.S.*, 76 F.3d 108, 110-11 (6th Cir. 1996) (quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir.) (unpublished) (citations omitted), *cert. denied*, 516 U.S. 942 (1995) and citing also to *Giraldo v. United States*, 54 F.3d 776 (6th Cir.) (unpublished), *cert. denied*, 516 U.S. 892 (1995) (additional citations omitted)). The parties have not raised any highly exceptional circumstances here, nor is the Court aware of any. Accordingly, to the extent that petitioner sought to re-raise her argument that her sentence was unreasonable, that argument also fails to provide a basis for granting the Motion.

### IV.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a

judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal, the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge